UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE E. SCHROEDER,

       Plaintiff,

Case No. 10-14968

v.

Honorable Nancy G. Edmunds

GRAND TRUNK WESTERN RAILROAD
CO.,

       Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [21]**

This lawsuit arises out of injuries Plaintiff Wayne Schroeder alleges that he suffered
while working the October 6-7, 2008 shift as a conductor for Defendant Grand Trunk
Western Railroad Company ("Defendant Railroad") at its yards in Port Huron, Michigan.
Specifically, Plaintiff claims that his shoulder and back were injured when a railcar hand
brake that he was applying suddenly and unexpectedly released before it ultimately
engaged.  His complaint alleges that Defendant Railroad violated the Federal Safety
Appliance Act ("FSAA"), 49 U.S.C. §§ 20301-20306, a federal safety act that requires
Defendant to equip its railcars with "efficient hand brakes," and violated the Federal
Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, a federal statute that requires
Defendant to provide Plaintiff with a reasonably safe place to work.

This matter comes before the Court on Defendant Railroad's motion for summary
judgment.  Defendant argues that (1) as to the FSAA claim, Plaintiff cannot establish that

the hand brake was "inefficient," (2) as to the FELA claim, Plaintiff cannot establish that it knew or should have known about the alleged unsafe condition and thus could not have breached any duty owed to Plaintiff, and (3) even if Plaintiff could establish his FSAA and FELA claims, they should be dismissed as a sanction for his "spoliation" of evidence. Because Defendant has not convinced the Court that Plaintiff's FSAA and FELA claims should be dismissed as a sanction for spoliation of evidence and because Plaintiff has presented evidence showing that genuine disputes exist on his FSAA and FELA claims, Defendant's motion for summary judgment is DENIED.

**I.   Facts**

The events that give rise to this lawsuit occurred near the end of Plaintiff's shift that began on October 6, 2008 and ended at about 2:00 a.m. on October 7, 2008.  (Pl.'s Dep. at 70-71.)   At the time of his injury, Plaintiff, a conductor with 35 years of railroad experience, was working with Thomas Wilkins, a railroad engineer, on track 12 of Defendant's yards in Port Huron, Michigan.  They were making up a train that was to depart on a westbound track.  (Pl.'s Dep. at 32-33, 72-73, 86-87, 92.)  Plaintiff's supervisor at the time, Derek Carter, described him as hardworking and a good railroad employee.  (D. Carter Dep. at 11.)

Plaintiff's injury occurred while he was attempting to secure the hand brake on the head car, a pulp boxcar out of a local paper company for that night that was subsequently identified as SRY5546.  (Pl.'s Dep. at 87, 129; Def.'s Ex. 5, 7/12/10 letter from Pl.'s counsel to Def.'s Risk Mitigation Officer.)  To set the hand brake, Plaintiff climbed up a side ladder on the first railcar making up a string of cars, swung around to the end of the car onto a foot walk that was immediately below the hand brake, hung onto the ladder with his left hand,

2

and manually cranked or turned the hand brake wheel with his right hand.  (Pl.'s Dep. at 99-101.)  Before applying or setting the hand brake, Plaintiff performed the required visual inspection and saw no external defects.  (Pl.'s Dep. at 102-03.)  As his supervisor testified, the conductor is to look for obvious defects.  There is no requirement to look into the internal components of the brake mechanism.  (D. Carter Dep. at 23-24.)

After his visual inspection, Plaintiff began the process of setting or tightening the hand brake.  To do so, Plaintiff places his right hand on the hand brake's wheel at the 12 o'clock position, pulls it clockwise to the 3 o'clock position, and repeats this process.  As the process is repeated, pressure builds, the brake tightens, and it becomes more difficult to pull the brake's wheel clockwise.  The process is repeated until the conductor is convinced that the hand brake is tight enough to hold the car.  He does not count how many times he must crank the wheel before it is tight enough to hold the car.  (Pl.'s Dep. at 102-106.)

Plaintiff then described how his injury occurred on October 7, 2008 while applying the hand brake on a railcar – at first it tightened and gained pressure as expected; then unexpectedly lost pressure, released, and jarred or jolted his arm first up and then down. After jumping off the car and telling his co-worker Tom Wilkins that the brake kicked off and his arm went numb, Plaintiff once again visually checked the hand brake.  Seeing nothing obviously wrong, Plaintiff climbed back on the car and successfully cranked the hand brake with his left hand until the hand brake tightened down properly and held the car in place. (Pl.'s Dep. at 102-118.)  Plaintiff first explained how the hand brake suddenly released:

> When I tightened the brake on, when I started to tighten the brake the brake was cranking like it normally does, cranking, and as I got it tighter it was cranking. As you're tightening down your brake, you're drawing on that cylinder so you're tightening it up.  You have to have enough force on that brake to secure the car, is what you're told to do, and I suppose everybody draws down tightness to –

3

everybody is different and in the process of drawing the brake tight it released on me.

When that mechanism in there released, it jarred my arm first in like a stunning pull and then down because of the fact that I was drawing down on it. The release mechanism, you're drawing it. It happened so quick that now that is how my arm went numb.

(Pl.'s Dep. at 103-04.)

He then explained what happened immediately after he was injured:

What happened next is I . . . got off the car, I had to quit what I was doing, and I walked out, trying to shake off my arm, trying to shake the numbness loose, you know, just like a charleyhorse or whatever you want to call it.

* * *

An then Tom asked me, "Wayne, is there something wrong?"

* * *

I said, "I hurt my arm." I said, "My arm just went numb."

* * *

I told him my arm went numb, I said the brake kicked off.

(Pl.'s Dep. at 111, 115, 117.)

Finally, Plaintiff explained how he reinspected the brake, got back on the car, and successfully applied the hand brake:

Well, I said, "Hold on a second. I'll check this brake." So I went back over there, looked at it and I didn't see nothing broken on it so I climbed back up, the way I normally do, but I was holding my right arm down, you know, trying not to use my right arm, and I got up there and I cranked on the brake with my left hand, just like we normally do. Of course, it's different when you're not, you know, you're not right-handed. So I'm cranking with the left hand, . . . . So far with my left hand until it tightened. . . . and it held the car in place. That's all we need to know, is that the hand brake is holding the car in place.

(Pl.'s Dep. at 117-18.)

4

After all this occurred, Plaintiff got on the locomotive, when back to the yard office, and his shift ended. (Pl.'s Dep. at 120.) He did not report the injury or the momentary malfunction of the hand brake to his supervisors. (Pl.'s Dep. at 121.)

As to the failure to report the hand brake as defective, both Plaintiff and his supervisor, Derek Carter, testified that they did not consider a hand brake to be defective when it malfunctioned only once and did, on further attempt, apply or set and held the rail car in place. (Pl.'s Dep. 124-125; D. Carter Dep. at 24-26.) Specifically, Plaintiff testified "[i]f I could see it didn't work a second time and maybe even a third time, then I would have said this has got a defective hand brake, this car can't go, but because the brake applied the second time, as far as I'm concerned it wasn't a defect. . . . The mechanism might have been defective inside, but as far as I'm concerned it wasn't a bad order car, something for me to bad order and report." (Pl.'s Dep. at 124, 125.) Derek Carter provided similar testimony; if the hand brake ultimately applied, it is not defective and thus would not require any reporting and the car with the hand brake would not be "bad ordered." (D. Carter Dep. at 24-26.)

Plaintiff concedes that he did not immediately report his injury as required under Defendant's policies and procedures. He explains that he did not do so because he assumed it was a temporary, short-lived injury that would not preclude him from being able to return to work without any problem.

> I did not report that injury because for the simple fact is I thought it was going to be like any other occurrence that happens out there, to work through and just go back to work. I did not know that it was going to go to this extreme where I was not going to be able to come back to work If I would have known that, I would have probably reported that injury.

* * *

5

Well, if I would have known then what I know now, I would have reported it.

(Pl.'s Dep. at 135, 136.)

Plaintiff admits that he remained available for work until November 8, 2008 and did not report his injury during that time frame. (Pl.'s Dep. at 123.) On November 10, 2008, Plaintiff applied for a leave of absence supported by a letter from his treating physician, Dr. Nakhleh, stating that Plaintiff's work restrictions prohibited him from doing his job. Plaintiff did not inform Defendant that he was suffering from an on-duty injury at that time because he was afraid he'd be fired for not reporting his injury when it first happened and then subsequently missed a call off the "spare board" while he was at the hospital getting an MRI his doctor had ordered to find out why his injury was not getting any better. (Pl.'s Dep. at 35, 137-144.)

Plaintiff first notified Defendant Railroad of his on-duty injury on April 23, 2009; approximately 6-1/2 months after he was injured. (Def.'s Ex. 3, Pl.'s counsel's 4/23/09 letter to Def.'s Risk Mgr.)

On May 17, 2010, Plaintiff's counsel wrote to Defendant's Risk Mitigation Officer and detailed the facts supporting the FSAA and FELA claims that were subsequently alleged in Plaintiff's December 15, 2010 complaint. (Def.'s Ex. 4, Pl.'s counsel's 5/17/10 letter to Def.'s Risk Mitigation Officer.)

In Answers to Interrogatories dated June 22, 2011, Plaintiff informed Defendant Railroad that his FELA and FSAA claims were based on (1) the hand brake's failure to properly tighten and work efficiently without springing back, (2) Defendant's failure to adopt and enforce a policy that would require its employees to report brakes that spring back during application, and (3) Defendant's failure to properly inspect and maintain its hand

6

brakes as a result of its failure to require the reporting of hand brakes that spring back during application.  (Def.'s Ex. 8, 6/22/11 Interrog. Ans. 1-3.)

Plaintiff's hand brake expert, Michael J. O'Brien, opined in his July 29, 2011 report that a hand brake that operated in the manner Plaintiff described was defective or "inefficient." Based on his training, experience, and review of discovery and other information, Mr. O'Brien reported as follows.  "It is common railroad industry knowledge that hand brakes can fail to function as intended."  (Pl.'s Ex. D, 7/29/11 Expert Rept. at 7.)  "[T]here are many circumstances wherein temporary binding, fouling, or jamming of hand brake system components can momentarily and intermittently render the handbrake inefficient."  (*Id.*)  "A hand brake may fail to operate efficiently as intended on one occasion, and then function efficiently as intended the next."  (*Id.*)  To be considered efficient, a hand brake "must function as intended each and every time it is operated."  (*Id.* at 8.)  If the hand brake is inefficient, it is in violation of the Federal Safety Appliance Act and the Safety Appliance Standards.  (*Id.* at 8, 12-14.)

Plaintiff's "description of the incident with the hand brake on SRY 5546 is a classic indication of obstruction, increased friction, snagging, entanglement, or twisting."  (*Id.* at 8.) "Over the course of my career, I have personally experienced many instances wherein a hand brake appeared to be tightening as designed when, in fact, the resistance feedback I felt was actually caused by binding, jamming, or fouling of a component of the hand brake system."  (*Id.*)  "Depending on the exact location and nature of the binding, fouling, or jamming, a user can experience a potentially dangerous sudden and unexpected loss of all lifting/turning resistance when the output force of the hand brake overcomes the resistance caused by the binding, fouling, or jamming.  If the nature of the binding, fouling,

7

or jamming is of such a nature that the output force cannot surmount the resistance encountered, the motion of the hand brake wheel can suddenly and unexpectedly stop." (*Id.*)

"The only way for anyone to be aware of all of the conditions that render a hand brake non-complying/defective is through proper training." (*Id.* at 11.) "It appears from [Plaintiff]'s deposition testimony that he was not trained to identify all of the potential conditions that are capable of rendering a hand brake defective or inefficient, particularly the sudden loss of turning resistance he experienced." (*Id.*) Moreover, from his testimony, it appears that the hand brake Plaintiff was using at the time he was injured was defective. (*Id.*) A properly trained railroad employee would have recognized that the hand brake in question was defective, and if properly instructed, the railroad employee would have reported the condition Plaintiff described in his deposition. (*Id.*)

Plaintiff's expert offered the following opinions: (1) Defendant "failed to provide an efficient hand brake on SRY 5546, in violation of the Safety Appliance Act and the Safety Appliance Standards," (2) "[t]he failure of the hand brake to operate as intended caused [Plaintiff]'s accident," (3) Defendant "failed to provide [Plaintiff] with a reasonably safe place in which to work," in violation of FELA, and (4) Defendant "was negligent in its failure to train/instruct employees like [Plaintiff] that when a hand brake responds as it did when he operated the hand brake on SRY 5546, it is non-compliant/defective and should be reported as such." (*Id.* at 14.)

Discovery closed on August 1, 2011, and Defendant filed its motion for summary judgment in September 2011.

**II.   Summary Judgment Standard**

8

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.  Analysis

Defendant's motion for summary judgment argues that (1) as to his FSAA claim, Plaintiff cannot establish that the hand brake he was using when he was injured was inefficient, i.e., it failed to function as intended, (2) as to his FELA claim, Plaintiff cannot establish that Defendant knew or should have known about the alleged unsafe condition and thus could not have breached any duty owed to Plaintiff, and (3) even if Plaintiff could establish his FSAA and FELA claims, they should be dismissed as a sanction for his "spoliation" of evidence.  The Court begins by analyzing Plaintiff's FSAA claim.

### A.  A Genuine Dispute as to Material Facts Exists on Plaintiff's FSAA Claim

The Federal Safety Appliance Act, 49 U.S.C. § 20302(a)(1)(B), provides in pertinent part that "[A] railroad carrier may use or allow to be used on any of its rail lines . . . . a vehicle only if it is equipped with . . . . efficient hand brakes."[1]  As the Sixth Circuit recently

---

[1] The FSAA does not create a cause of action.  Rather, a "cause of action under that statute is created by the Federal Employers' Liability Act." *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 810 (6th Cir. 1996) (citing *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166 (1969)), *abrogated on other grounds by Reeves v. Sanderson Plumbing*

10

observed, "[t]he FSAA imposes an absolute duty on railroads to provide and maintain certain safety appliances. . . ." *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 432 (6th Cir. 2003). "The statutory liability is not based upon the carrier's negligence. The duty imposed is an absolute one, and the carrier is not excused by any showing of care, however, assiduous." *Brady v. Terminal R. Ass'n of St. Louis*, 303 U.S. 10, 15 (1938). Relevant here, the Supreme Court recognized in a FSAA hand brake case, *Myers v. Reading Co.,* that:

> A railroad subject to the Safety Appliance Acts may be found liable if the jury reasonably can infer from the evidence merely that the hand brake which caused the injuries was on a car which the railroad was then using on a line, in interstate commerce, and that the brake was not an "efficient" hand brake.

331 U.S. 477, 482-83 (1947). The *Myers* Court also observed that "[e]fficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate." *Id.* at 483.

"To recover for a violation of the FSAA, therefore, plaintiffs need only show (1) the statute was violated; and (2) they suffered injuries 'resulting in whole or in part' from the defective equipment." *Richards*, 330 F.3d at 432. The Court addresses each of these elements in turn.

### 1. Plaintiff Presents Evidence that Hand Brake was Defective

Plaintiff presents evidence -- his deposition testimony and his expert's opinions as provided in his expert report -- showing that Defendant violated the FSAA because the

---

*Prods., Inc.*, 530 U.S. 133 (2000).

hand brake of the railcar Plaintiff was working on when his injuries occurred failed to function as intended each and every time it was operated and was thus inefficient or defective.  Despite Defendant's arguments to the contrary, Plaintiff need not establish that the hand brake suffered from a particular defect.  "There are two recognized methods of showing that an appliance was defective:  Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner." *Richards*, 330 F.3d at 432 (internal quotation marks and citations omitted).  Plaintiff here uses the second method to establish a defect or inefficiency in the hand brake he was using.  "If the plaintiff demonstrates a defect using the second method, he or she need not show an actual break or visible defect." *Id.* (citing *Myers*, 331 U.S. at 483).  Moreover, "[i]f the plaintiff establishes that the appliance functioned inefficiently at the relevant time, it is irrelevant that the appliance worked efficiently both before and after the occasion." *Id.* (citing *Myers*, 331 U.S. at 483).

Plaintiff presents evidence showing that the hand brake functioned inefficiently on October 7, 2008.  It is irrelevant whether that hand brake worked efficiently before or after the one time that it malfunctioned and injured Plaintiff.  *See Richards*, 330 F.3d at 432. Because Plaintiff is using this second method to establish the hand brake's inefficiency, it is "not necessary for the plaintiff to show the specific reason why the brake failed." *Id.* (discussing the holding in *Didinger v. Pennsylvania R.R. Co.*, 39 F.2d 798, 799 (6th Cir. 1930)).  In fact, as the Sixth Circuit observed in *Richards*, "plaintiffs may rely on the doctrine of *res ipsa loquitur* to prove their FSAA claims." *Richards*, 330 F.3d at 432 (citing

the holding in *Myers*, 331 U.S. at 483-84, that the "conductor's testimony that [the] brake wheel did not function like [an] ordinary wheel and that it suddenly 'kicked back' and knocked him to [the] ground was sufficient to make an issue for the jury as to whether the brake was defective").[2]

### 2. Plaintiff Presents Evidence of a Causal Link

Plaintiff also submits sufficient evidence that his injuries were causally linked to the allegedly defective hand brake, i.e., his deposition testimony and his expert's opinion that Defendant failed to provide an efficient hand brake, and that brake's failure to operate as intended caused Plaintiff's accident and injuries. (Pl.'s Ex. D, Expert Rpt. at 14.) It is well-established that the relaxed test for establishing causation for FELA cases announced in *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500 (1957), also applies to FSAA claims. *Richards*, 330 F.3d at 433 (citing *Urie v. Thompson*, 337 U.S. 163 (1949)). This Court thus applies the test set out in *Rogers* when "determining whether there is a jury question" on causation:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought. . . . Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may

---

[2]It is Plaintiff's claim that he was injured as a result of a particular event -- that the hand brake on a railcar failed to work as intended when he initially tried to engage it on October 7, 2008. This is the key factor that distinguishes Plaintiff's FSAA claim from the claims rejected in the decisions Defendant relied on at the November 30, 2011 hearing. Unlike Plaintiff here, the plaintiffs' fatal flaw in *O'Neill v. BNSF Ry. Co.*, No. A10-1987, 2011 WL 4008276 (Minn. Ct. App. Sept. 12, 2011), and *Tezak v. BNSF Ry. Co.*, No. C09-05212BHS, 2010 WL 3211693 (W.D. Wash. Aug. 12, 2010), was that they were claiming a "cumulative injury" from various unidentified inefficient devices that they encountered over the course of their employment. Plaintiff makes no such claim here.

be drawn that negligence of the employer played any part at all in the injury or death.

*Rogers*, 352 U.S. at 506-07.  As the Sixth Circuit observed "*Rogers* requires a plaintiff . . . to offer 'more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more.'"  *Richards*, 330 F.3d at 434 (quoting *Aparicio*, 84 F.3d at 810.  *See also CSX Transp., Inc. v. McBride*, ___ U.S. ___, 131 S. Ct. 2630, 2636, 2641 (2011) (affirming that the "relaxed standard of causation" that applies under FELA is that announced in *Rogers*).

As instructed in *Richards*, "Courts in FSAA cases . . . should focus on whether a reasonable jury could conclude that the defective appliance played *any* part, even the slightest, in bringing about the plaintiff's injury.  This means that if a reasonable jury could find that the plaintiff's injury 'was within the risk created by' the defective appliance, the plaintiff's right to a jury trial should be preserved."  330 F.3d at 437.  Applying this legal precedent and considering Plaintiff's deposition testimony and his expert's report in a light most favorable to Plaintiff, this Court concludes that a reasonable jury could conclude that a defective or inefficient hand brake played a part in bringing about Plaintiff's injuries and could also find that Plaintiff's injuries were within the risk created by the defective hand brake.

The Court now turns to Defendant's argument that Plaintiff cannot establish his FELA negligence claim.

## B.  A Genuine Dispute as to Material Facts Exists on Plaintiff's FELA Negligence Claim

14

FELA, 45 U.S.C. § 51, "provides a federal cause of action against a railroad company for employees injured as a result of their employer's negligence[.]" *Borger v. CSX Transp., Inc.*, 571 F.3d 559, 563 (6th Cir. 2009). "The Act requires a railroad company to provide its workers with a reasonably safe place in which to work and such protection [against the hazard causing the injury] as would be expected of a person in the exercise of ordinary care under the circumstances." *Id.* (internal quotation marks and citations omitted).

To establish a FELA action, a plaintiff must "prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Aparicio*, 84 F.3d at 810 (internal quotation marks and citations omitted). In order to create a jury question, "[a] plaintiff must present more than a scintilla of evidence to prove that (1) an injury occurred while the plaintiff was working within the scope of his . . . employment with the railroad, (2) the employment was in the furtherance of the railroad's interstate transportation business, (3) the employer railroad was negligent, and (4) the employer's negligence played some part in causing the injury for which compensation is sought under the Act." *Id.* Only the last two elements are in dispute. As to negligence, Defendant argues that it could not have breached any duty owed to Plaintiff because Plaintiff testified that the hand brake at issue was not "defective;" and even if there was evidence that the hand brake was defective, Defendant had no notice of that defect and thus had no duty to safeguard against injuries that were not reasonably foreseeable. As to causation, Defendant Railroad argues that, because it breached no duty owed to Plaintiff, it could not have caused Plaintiff's injuries. The Court addresses each of these arguments below beginning with Defendant's duty and breach arguments.

15

### 1.  Plaintiff Presents Evidence that Hand Brake did not Work as Intended

First, despite Defendant's reliance on Plaintiff's testimony that he did not consider a hand brake that malfunctioned once and then performed as it should after that malfunction to be "defective," his expert's report is sufficient evidence to create a jury question on that issue.  As discussed above, Plaintiff's expert has concluded that Defendant failed to provide an "efficient" hand brake on the railcar Plaintiff was working on when he was injured and that defective hand brake caused Plaintiff's injuries.  (Pl.'s Ex. D, O'Brien Expert Rpt. at 14.)

### 2.  Plaintiff Does Not Assert a New Negligence Theory

Before the Court addresses Defendant's arguments on duty and breach, it must first address Defendant's argument that the negligence theory Plaintiff asserts in its response -- the failure to adopt and enforce a policy or rule and the failure to train employees to recognize and report the type of hand brake defect Plaintiff experienced -- is new.  This Court does not take such a narrow view of the negligence theories that Plaintiff disclosed to Defendant before it filed this motion.  Defendant's argument lacks merit and is rejected for the following reasons.

Plaintiff's answers to Defendant's Interrogatories in June 2011 advise Defendant that his FELA claim is based on Defendant's failure to adopt and enforce a policy that would require its employees to report hand brakes that spring back during application, i.e., those that temporarily malfunction in the way Plaintiff described in his deposition testimony. Plaintiff's interrogatory answers further advised Defendant that his FSAA and FELA claims are based on the subject hand brake's failure to properly tighten and work efficiently without

16

springing back.  (Def.'s Ex. 8, 6/22/11 Interrog. Ans. 1-3.)  Plaintiff's expert's report also discloses his opinion that Defendant violated FELA and was negligent by failing "to train/instruct employees like [Plaintiff] that when a hand brake responds as it did when he operated the hand brake on SRY 5546, it is non-compliant/defective and should be reported as such."  (Pl.'s Ex. D, O'Brien Expert Rpt. at 14.)

Moreover, the evidence Plaintiff presents to establish the negligence theory disclosed in his interrogatory answers -- that Defendant failed to adopt and enforce a policy that would require employees to recognize and thus report as defective hand brakes that spring back during application -- is the same evidence he presents to establish the negligence theory disclosed in his expert's report -- that Defendant failed to train and instruct Plaintiff to recognize and report as defective a hand brake that temporarily malfunctions by springing back.  That evidence consists of Plaintiff's deposition testimony, his supervisor's deposition testimony, and his expert's report.  *See Phillips v. Chesapeake & Ohio Ry. Co.*, 475 F.2d 22, 24 (4th Cir. 1973) (observing that the plaintiff's claims that the defendant railroad "was negligent in failing to provide adequate training and to promulgate and enforce safety rules" were "closely related" and "[t]he same evidence would have enabled the jury to find that the [defendant railroad] was negligent" under both theories).  Fleshed out, Plaintiff's negligence theory is that Defendant failed to adopt and enforce, via employee training, a policy that employees are required to recognize and report as defective any hand brake that temporarily malfunctions in the way Plaintiff described in his deposition testimony, and Defendant's failure to do so played a part in bringing about his injuries.

17

Having determined that Plaintiff's response does not announce an undisclosed negligence theory, the Court now addresses Defendant's arguments that it breached no duty owed to Plaintiff.

### 3.  Plaintiff Presents Evidence Showing Duty, Breach and Foreseeability

Defendant argues that, because it had no notice of the defective hand brake that allegedly caused Plaintiff's injuries, it cannot be held liable for those injuries.  Plaintiff responds that he does not have to establish notice because Defendant Railroad created the unsafe condition.  Both arguments misconstrue relevant, well-established FELA precedent.

Both the Sixth Circuit and the Supreme Court have long recognized that "railroads have a duty to furnish employees with a 'reasonably safe place in which to work and such protection [against the hazard causing the injury] as would be expected of a person in the exercise of ordinary care under those circumstances."  *Aparicio*, 84 F.3d at 810 (quoting *Urie v. Thompson*, 337 U.S. at 179 n.16).  The concepts of ordinary care, known dangers, and foreseeable injuries have also been covered.

> While a railroad has a duty to use ordinary care to protect employees from known dangers, *Urie v. Thompson* also established that a railroad breaches its duty to its employees by failing to provide a safe working environment if it knew or <u>should have known</u> that it was not acting adequately to protect its employees. "[W]e think that negligence, within the meaning of the Federal Employers' Liability Act, attach[es] if the [employer] 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees."

*Id.* at 811 (quoting *Urie*, 337 U.S. at 178) (emphasis added).  As the Sixth Circuit further clarified, the defendant railroad's duty in a FELA case "is measured by what a reasonably

18

prudent person should or could have reasonably anticipated as occurring under like circumstances." *Id.* (internal quotation marks and citation omitted).  "In that regard, the jury may be told that '[the railroad's] duties are measured by what is reasonably foreseeable under like circumstances.'"  *CSX Transp., Inc. v. McBride*, 131 S. Ct. at 2643 (quoting *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 117 (1963)).  "Thus, if a person has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap or injury, then the party is not required to do anything to correct the condition." *Id.* (internal quotation marks and citations omitted).

Plaintiff's expert's report notes that "[i]t is common railroad industry knowledge that hand brakes can fail to function as intended."  (Pl.'s Ex. D, O'Brien Expert Rpt. at 7.)  He further observed that Plaintiff's "description of the incident with the hand brake on SRY 5546 is a classic indication of obstruction, increased friction, snagging, entanglement, or twisting" of a hand brake (*id.* at 8), and concluded that "[w]hen a hand brake fails to fully apply or release, regardless of the cause, it is not operating as intended and is not efficient" (*id.* at 9) and is in violation of the FSAA (*id.* at 12).  Construing the evidence in the light most favorable to Plaintiff, he has presented more than a scintilla of evidence to show that Defendant Railroad, though the exercise of due care, should have known that a hand brake that malfunctions as Plaintiff described is not operating as intended, is defective and not efficient. In addition, the type of injuries that Plaintiff claims he suffered could have reasonably been anticipated as occurring under these circumstances.  A reasonable jury could accept Plaintiff's expert's conclusions "and find that a reasonably prudent employer would have known about the risk factors and taken steps to ameliorate them."  *Aparicio*,

84 F.3d at 811.  As to Defendant's "lack of notice" argument, the *Aparicio* court rejected a similar argument when it observed "the law does not impose a duty on a employer to address a safety hazard or risk only in the event that a similar injury has occurred before from the same cause."  *Id.*

Plaintiff's expert's report also discusses what Defendant should have known about hand brakes, how the problem Plaintiff encountered could have been ameliorated, and concludes that Defendant breached the duty of care it owed to Plaintiff.  Viewing the evidence in the light most favorable to Plaintiff, it shows that Defendant Railroad breached the duty it owed Plaintiff by allowing a defective hand brake to remain in service and by failing to adopt and enforce a policy that would have ameliorated this risk factor by training its employees to recognize hand brake defects of the sort Plaintiff described as safety hazards and by requiring them to immediately report this type of malfunction.  Thus, despite Defendant's arguments to the contrary, Plaintiff has presented sufficient evidence to create a jury question on the issue of its negligence.

### 4.   Plaintiff Presents Evidence that Defendant's Negligence Caused his Injuries

It is undisputed that a relaxed standard of causation applies to FELA cases.  *See CSX Transp., Inc. v. McBride*, 131 S. Ct. at 2636, 2641; *Aparicio*, 84 F.3d at 812.  Viewing the evidence discussed above in the light most favorable to Plaintiff and applying the FELA relaxed standard of causation, this Court concludes that Plaintiff's evidence is sufficient to create a jury question whether Defendant's negligence "played any part, even the slightest, in producing" Plaintiff's injuries.  *See Rogers*, 352 U.S. at 506-07.

For all the above stated reasons, Defendant is not entitled to summary judgment on Plaintiff's FELA negligence claim.  The Court now addresses Defendant's argument that Plaintiff's FSAA and FELA negligence claims should be dismissed as a discovery sanction under the spoliation of evidence doctrine.

### C.  Defendant Is Not Entitled to Dismissal as a Discovery Sanction

Defendant argues that Plaintiff's FSAA and FELA negligence claims should be dismissed as a discovery sanction.  Invoking the spoliation of evidence doctrine, Defendant argues that Plaintiff severely prejudiced its defense of this action by untimely reporting his injury, untimely reporting that his injury resulted from his use of a defective hand brake, and untimely identifying the railcar with the defective hand brake and thus should be punished with a dismissal of his lawsuit.  Plaintiff responds that Defendant is not entitled to the relief it seeks.  This Court agrees with Plaintiff.  This is not a situation where the Court should invoke its inherent power; and even if it were, it would not take the drastic action of dismissing Plaintiff's claims and preclude a jury from considering them on their merits.  *See Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009) (observing that "a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence.").

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Forest Labs, Inc. v. Caraco Pharm. Labs, Ltd.*, No. 06-CV-13143, 2009 WL 998402, *1 (E.D. Mich. Apr. 14, 2009) (internal quotation marks and citation omitted).

21

Because Defendant Railroad is the party seeking sanctions under the spoliation of evidence doctrine, it has the burden of proving that:  Plaintiff "(1) had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) acted with a culpable state of mind [in] destroying or losing the evidence; and that (3) the missing evidence is relevant to the innocent party's claim or defense." *In re Global Technovations, Inc.*, 43 B.R. 739, 778 (Bankr. E.D. Mich. 2010), *aff'd,* No. 10-12781, 2011 WL 1297356 (E.D. Mich. Mar. 31, 2011).  As Plaintiff correctly argues, Defendant has not met its burden.

Defendant improperly invokes the spoliation of evidence doctrine.  Its complaint is not that Plaintiff destroyed or lost evidence.  Rather, Defendant complains that Plaintiff took too long to report his work-related injury (April 23, 2009), to specify that he was claiming he was injured from a hand brake that did not function as intended (May 17, 2010), and to identify the railcar he was working on when he was injured (July 12, 2010).  Despite Defendant's claims to the contrary, the Court is not convinced that Defendant was severely prejudiced by the timing of Plaintiff's disclosures.  Discovery in this matter did not close until August 1, 2011.  Defendant had ample time to conduct discovery and prepare its defense. If Defendant felt the need for additional time for discovery, it could have but did not ask for it.  Under these facts, Defendant falls woefully short of convincing the Court that it is entitled to the drastic discovery sanction that it seeks.

## IV.  Conclusion

For the above stated reasons, Defendant's motion for summary judgment is DENIED.

22

s/Nancy G. Edmunds                                    
Nancy G. Edmunds
United States District Judge

Dated:  December 5, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 5, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer                                    
Case Manager

23